# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| KIMBERLY D. WHEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:14-CV-34 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Kimberly D. Wheeler ("Wheeler") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").[1] 42 U.S.C. §§ 401–433. Wheeler alleges that the Administrative Law Judge ("ALJ") erred by failing to: (1) give proper weight to the opinion of her treating physician; (2) consider certain treatment records submitted to the ALJ prior to the hearing; and (3) give proper weight to a previous ALJ decision denying benefits. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **DENY** Wheeler's Motion for Summary Judgment (Dkt. No. 14), and **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Wheeler failed to demonstrate that she was disabled

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

under the Act.[2]  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Wheeler protectively filed for supplemental security income ("SSI") and DIB on June 14, 2011, claiming that her disability began on May 27, 2011, due to degenerative disc disease, bulging discs, hearing loss, and bipolar disorder.[3]  R. 207–17, 235, 238–239.  Wheeler's date last insured was June 30, 2011.  R. 235.  Thus, she must show that her disability began on or before June 30, 2011 and existed for twelve continuous months to receive DIB.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).  The state agency denied Wheeler's application at the initial and reconsideration levels of administrative review.  R. 115–124, 137–139.  On July 22, 2013, ALJ Mary C. Peltzer held a hearing to consider

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Wheeler had previously filed an application for SSI and DIB on December 7, 2009. R. 82. These applications were denied through the hearing level by an unfavorable decision issued by ALJ Brian Kilbane on May 26, 2011. R. 82–92. Wheeler appealed to the Appeals Council, which denied her appeal. R. 98–100. Wheeler did not appeal further.

2

Wheeler's claim for DIB.[4] R. 37–78. Counsel represented Wheeler at the hearing, which included testimony from vocational expert Andrew Biel.

On August 19, 2013, the ALJ entered her decision analyzing Wheeler's claim under the familiar five-step process[5] and denying her claim for benefits. R. 17–29. The ALJ noted that Wheeler had filed a previous application for SSI and DIB benefits that was denied by ALJ Brian P. Kilbane on May 26, 2011. R. 17. Wheeler's current application for DIB benefits alleged disability beginning on May 27, 2011; however, Wheeler requested to amend her alleged onset date to July 1, 2008, the same onset date alleged in her prior application for benefits. Wheeler also requested to reopen both the SSI and DIB applications for benefits, arguing that new and material evidence existed to establish disability as of July 1, 2008. The ALJ determined that Wheeler had "not furnished new and material evidence, as it relates to her condition from July 1, 2008 through May 26, 2011, to justify reopening" the May 26, 2011 ruling and denied her request to reopen her prior applications. R. 18.

The ALJ found that Wheeler was insured at the time of the alleged disability onset and that she suffered from the severe impairments of post-operative degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar and thoracic spine, and hearing loss. R. 20. The ALJ determined that these impairments, either individually or in combination, did

---

[4] The ALJ found that Wheeler's claim for SSI was not properly before her because the application was initially denied due to excess resources and Wheeler did not appeal the denial. R. 17–18.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

not meet or medically equal a listed impairment. R. 22. The ALJ concluded that Wheeler retained the residual functional capacity ("RFC") to perform a range of light work. Specifically, the ALJ found that Wheeler was capable of lifting 10 pounds frequently and 20 pounds occasionally. However, she was limited to only occasional pushing and pulling with the bilateral lower extremities, occasional climbing stairs and ramps, and could not kneel, crouch, crawl, be exposed to unprotected heights or use ladders or scaffolds. R. 22. Wheeler could perform frequent balancing, but only occasional stooping, and could have no more than occasional exposure to extreme cold, humidity, and workplace hazards, such as dangerous moving machinery. Id. The ALJ also limited Wheeler to unskilled work with a specific vocational preparation ("SVP") of 1 or 2, in a moderate noise environment.[6] Id.

The ALJ determined that Wheeler was unable to return to any of her past relevant work, but that she could perform jobs that exist in significant numbers in the national economy, such as cafeteria attendant, laundry sorter/separator, and checker. R. 27–28. Thus, the ALJ concluded that Wheeler was not disabled. R. 28. Wheeler appealed the ALJ's decision and the Appeals Council denied Wheeler's request for review on August 18, 2014. R. 1–3. This appeal followed.

## **ANALYSIS**

Wheeler argues that the ALJ should have given greater weight to the opinion of her treating physician, Virginia A. Blanks, M.D. She also asserts that the ALJ failed to consider treatment records from Dr. Blanks that Wheeler submitted prior to the hearing. Finally, Wheeler

---

[6] Unskilled work corresponds to an SVP of 1-2. Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000). Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually 30 days. See 20 C.F.R. §§ 404.1568, 416.968.

4

argues that the ALJ should have given little weight to the previous ALJ's May 26, 2011 decision denying benefits. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision denying Wheeler's claims.

### A. Treating Physician Opinion

Wheeler asserts that the ALJ should have given greater weight to the opinions of Dr. Blanks dated March 7, 2013 and July 10, 2013. Wheeler also asserts that the ALJ "failed to properly address [an opinion] from Dr. Blanks dated July 26, 2012." Pl. Br. Summ. J. p. 14, Dkt. No. 15. Wheeler emphasizes that these opinions "reflect significant limitations and would preclude engagement in any work activity." Id.

Dr. Blanks completed a physical RFC questionnaire on March 7, 2013, nearly two years after Wheeler's date last insured of June 30, 2011, and determined that Wheeler was unable to lift and carry 10 pounds or more, and could only rarely carry less than 10 pounds. R. 947. Dr. Blanks further determined that Wheeler's pain and other symptoms would constantly interfere with her attention and concentration and that Wheeler would be absent more than 4 days per month due to her impairments. R. 948.[7] On July 10, 2013, Dr. Blanks indicated that the March 7, 2013 physical RFC limitations extended back to July 10, 2009. In support, Dr. Blanks relied on an MRI dated December 10, 2009 that she asserted showed "severe disc disease in T12 L1," as well as the fact that Wheeler indicated she was first unable to work on July 10, 2009. R. 943.

Dr. Blank's July 26, 2012 opinion was contained in a form entitled Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Medical

---

[7] In the physical RFC questionnaire, Dr. Blanks also determined that Wheeler could sit for no more than 20 minutes at a time, stand for no more than 30 minutes at a time, sit and stand/walk about two hours in an eight hour period, would require a job that permitted shifting positions at will from sitting, standing, or walking, and would frequently need to take unscheduled breaks of 10 to 20 minutes in length. R. 946–47. Wheeler also could only rarely look down, turn her head, look up, or hold her head in a static position, and could never twist, stoop, crouch, or climb ladders or stairs. R. 948.

Leave Act) ("FMLA form"), which Dr. Blanks had provided to Wheeler's husband's employer. R. 283–286; Pl. Br. Summ. J. p. 16, Dkt. No. 15. Wheeler argues that the FMLA form "illustrates the level of care [she] needed," specifically that Wheeler would need care eight hours a day, two to three days per month. Id. Plaintiff states, "This level of needed care would reasonably result in [Wheeler] being absent from work on these two to three days." Pl. Br. Summ. J. at 16, Dkt. No. 16.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 U.S. Dist. LEXIS 32627, at *5, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). However, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if she sufficiently explains her rationale and if the record supports her findings.[8]

Here, the ALJ afforded minimal weight to Dr. Blanks' March 7, 2013 and July 10, 2013 opinions that Wheeler is unable to work, and has been unable to work since July 2009. The ALJ detailed her reasons for discounting Dr. Blank's opinion regarding Wheeler's RFC, stating it was

---

[8] When a treating physician's medical opinion is not given controlling weight, an ALJ is to consider the following factors when assigning weight to the opinion: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). Although the regulations require consideration of these factors, the ALJ is not required to specifically address each one in her opinion. See Henley v. Astrue, No. 3:11-cv-488, 2012 U.S. Dist. LEXIS 94872, at *10, 2012 WL 2804846, at *4 (W.D.N.C. Jul. 10, 2012).

"rendered almost two years after [Wheeler's] date last insured expired" and was inconsistent with the medical record "which reveal[s] that following [Wheeler's] neck surgery in September 2010, and through her date last insured of June 30, 2011, she has received minimal treatment for her pain." R. 25. The ALJ also noted that Dr. Blanks did not begin treating Wheeler until January 2012, seven months after her date last insured expired. Id. Wheeler's argument that Dr. Blanks' opinion should have been given more weight in determining her RFC is unpersuasive. As the ALJ noted, Dr. Blanks completed the RFC questionnaire nearly two years following the expiration of Wheeler's date last insured. Further, as discussed below, Wheeler's treatment records do not support the level of disability alleged in Dr. Blank's RFC questionnaire. Moreover, the determination of both a claimant's RFC and the ultimate determination of disability rest with the ALJ; thus, Dr. Blank's opinion regarding RFC is not entitled to any greater weight simply because she is Wheeler's treating medical source. 20 C.F.R. §§ 404.1527, 404.1546.

The ALJ did not specifically address the July 26, 2012 FMLA form, which Wheeler asserts represents Dr. Blank's opinion that she would likely miss work two to three days of work a month due to symptoms related to her "chronic severe gouty arthritis." R. 283–84. However, at most, the ALJ committed harmless error by failing to specifically consider the FMLA form. In Social Security cases, errors are harmless when it is inconceivable that a different administrative conclusion would have been reached absent the error. Camp v. Massanari, 22 F. App'x 311 (4th Cir. 2001) citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000). While the FMLA form indicated that Wheeler might miss two to three days of work due to her symptoms, Dr. Blanks' March 7, 2013 RFC questionnaire, which the ALJ specifically considered, indicated that she would miss at least four days of work a month, starting in 2009. Also, the FMLA form

7

was completed more than a year after her date last insured had expired.  Finally, FMLA forms are not determinative of DIB or SSI; they are simply pieces of evidence.

Moreover, Wheeler's treatment records do not support the level of disability alleged in Dr. Blank's RFC questionnaire or the FMLA form.  Wheeler had surgery on her cervical spine on September 10, 2009, when an anterior cervical diskectomy with fusion was performed.  R. 305.  Following the surgery, Wheeler reported that her neck pain was improved, but complained about pain in her lower back.  R. 315.  An MRI on June 2, 2010 showed an impression of stable spondylotic/discogenic changes.  R. 506.  Another MRI performed on January 7, 2011 showed that the lumbar vertebra appeared intact and in satisfactory alignment, with moderate interspace narrowing and prominent endplate osteophytes at the T12-L1 level.  R. 326.  Wheeler followed up with her neurologist, who indicated on January 12, 2011 that the MRI showed "no significant smoking guns," but that Wheeler did have disc degeneration at T12-L1.  R. 319.  During this January 12, 2011 visit, Wheeler was discharged from her neurosurgeon's care, advised to follow up with her primary care physician, and given one-time prescriptions for Valium, Lortab, a Medrol dose pack, Elavil, and an epidural steroid injection.  Id.  Wheeler underwent a steroid injection on February 23, 2011 and followed up with her primary care physician on February 25, 2011.  R. 323, 610.  During this visit, her provider informed her that the clinic could no longer prescribe her narcotics because she had been prescribed pain medication by her surgeon.  R. 611.  The provider indicated that "after a long discussion, [Wheeler] concluded that she was becoming dependent on the medication and would try NSAIDs and muscle relaxers . . . [and stated] she has actually felt better since not having them for the past two weeks."  Id.  At the hearing before the ALJ, Wheeler testified that during the summer of 2011, she used muscle relaxers, topical gels, and pain medications to relieve her pain.

8

R. 56. She also testified that she was able to shower by herself, help with cooking and cleaning the house, visit with her grandchildren, read, and watch movies and television. R. 63–64, 66–67.

Following the February 2011 visit, Wheeler was not seen again for back pain until January 2012, seven months after her date last insured, when she saw Dr. Blanks for a physical.[9] Ex. A. to Pl. Br. Summ. J. p. 41, Dkt. No. 15-1. Dr. Blanks indicated that Wheeler felt "well with minor complaints" including back pain, left ankle pain, and generalized pain. Id. Dr. Blanks prescribed hydrocodone and valium to treat Wheeler's back pain. Id. at 43. On September 19, 2012, Wheeler was seen at the Carilion Spine Center for a lumbar spinal surgical evaluation and was diagnosed with cervical and lumbar degenerative disc disease. R. 638. The treatment recommended for lumbar degeneration was occasional physical therapy and "possibly injections." R. 638. The doctor believed that Wheeler's bilateral foot pain could be arthritic, and recommended that she see a specialist. Id. However, on October 30, 2012, Wheeler was seen at Roanoke Rheumatology, with the resulting impression that her chronic pain was "suggestive of fibromyalgia and not inflammatory arthritis." R. 894.

As noted by the ALJ, with the exception of Wheeler's cervical diskectomy in September 2010, her treatment has been generally routine and conservative. The ALJ recognized that Wheeler had some limitations due to her impairments on or before her date last insured; however, she concluded that there was no evidence that these limitations precluded Wheeler from performing basic work activities at the limited light exertional level. R. 25. Indeed, the issue is not whether Wheeler had physical impairments or experienced symptoms, but whether those impairments and symptoms prevented her from performing the limited range of jobs at the

---

[9] The ALJ indicates in her opinion that Wheeler was not seen again for back pain until September 2012. R. 24. However, as Wheeler has stated, the record is missing certain medical records from Dr. Blanks, which Wheeler attached to her motion for summary judgment. These records include Wheeler's initial visit to Dr. Blanks in January 2012.

9

light exertional level identified by the vocational expert. See Hays, 907 F.2d at 1457–58 ("An individual does not have to be pain-free in order to be found 'not disabled.'").

The regulations empower the ALJ to review the evidence, assign weight to the opinions of reviewing, consulting and treating physicians, and formulate an RFC. 20 C.F.R. §§ 404.1545, 404.1546. An ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). When determining Wheeler's RFC, the ALJ considered the evidence of record as well as Wheeler's own reports of her activities and the treatment notes from her providers. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's determination that Wheeler is capable of a limited range of light work.

### B. Treatment Records from Dr. Blanks

As an alternative to granting summary judgment, Wheeler requests that the court remand this case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence provided in exhibit 1 to Wheeler's motion in support of summary judgment. See Dkt. No. 15-1. In exhibit 1, Wheeler submitted records from Dr. Blanks, beginning with her initial visit on January 4, 2012. See Ex. 1 to Pl. Mem. Summ. J, Dkt. 15–1. The records include Wheeler's treatment with Dr. Blanks, as well as "concurrent treating specialists, previous imaging studies and previous treating medical sources."[10] Pl. Br. Summ. J. p. 18, Dkt. No. 15.

"A claimant seeking a remand on the basis of new evidence . . . must show that the evidence is new and material and must establish good cause for failing to present the evidence

---

[10] While not all the records submitted by Wheeler in exhibit 1 were omitted from the administrative record, it does appear that the administrative record omitted Dr. Blanks' treatment notes dated January 2012 through March 2013, as well as the evaluation performed by Gary E. Bayliss, M.D. on August 28, 2012. Dr. Blanks referred Wheeler to Dr. Bayliss for an evaluation of Wheeler's hands and feet. Ex. 1 to Pl. Mot. Summ. J. p. 96–97.

10

earlier." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Id. at 96. Wheeler has the burden of demonstrating that a remand is appropriate given any new and material evidence. Meadows v. Astrue, 5:08-cv-01129, 2010 U.S. Dist. LEXIS 31697, at *8, 2010 WL 1380117, at *3 (S.D.W. Va. Mar. 31, 2010).

Wheeler has satisfied the good cause requirement, which obligates a plaintiff to demonstrate a reasonable justification for the failure to acquire and present the evidence at the administrative level. See Combs v. Astrue, No. 5:06-cv-00072, 2007 U.S. Dist. LEXIS 28391, at *21, 2007 WL 1129398, at *6 (W.D. Va. Apr. 17, 2007) (citing Templeton v. Comm'r of Soc. Sec., 215 F. App'x 458 (6th Cir. 2007)). Wheeler explains that, though she properly submitted Dr. Blanks' medical records prior to the ALJ hearing, Dr. Blanks' treatment notes were not included in the administrative transcript.[11]

However, Wheeler has failed to show that the new evidence is material. Wheeler argues that the additional records from Dr. Blanks include consistent references to back pain and foot pain, and contradict the ALJ's conclusion that Wheeler did not seek any treatment for her back pain between February 2011 and September 2012. R. 24. Wheeler also claims these records demonstrate the familiarity Dr. Blanks had with Wheeler's medical history and bolster Dr. Blanks' opinion regarding Wheeler's RFC. The Commissioner argues that Dr. Blanks' treatment notes do not constitute new and material evidence.

---

[11] Wheeler included the submission receipt with her motion for summary judgment.

Dr. Blanks' treatment notes began in January 2012 and documented Wheeler's consistent complaints of back pain.[12] However, Dr. Blanks' knowledge of Wheeler's condition at any time prior to Wheeler's initial visit in January 2012 is necessarily limited to a review of Wheeler's medical record – the same information available to the ALJ. As correctly noted by the ALJ, Dr. Blanks did not begin treating Wheeler until seven months after her date last insured expired; thus, the treatment records provided as new evidence from Dr. Blanks are well outside the relevant time period.[13] Further, the records show that Dr. Blanks provided routine and conservative care to Wheeler, prescribing medications to treat her pain. As such, the evidence Wheeler has provided regarding Dr. Blanks' treatment is not material as there is no reasonable possibility it would have changed the outcome of the Commissioner's decision. Accordingly, the new evidence presented provides no reason for remand.[14]

**C. Previous ALJ Decision**

The ALJ gave considerable weight to the previous ALJ's May 26, 2011 decision, finding that Wheeler was not disabled and could do a limited range of light work. R. 26. Wheeler asserts that the ALJ should have afforded little weight to the May 26, 2011 decision.

---

[12] Dr. Blanks' treatment notes reference back pain on January 4, 2012, April 4, 2012, September 19, 2012, November 26, 2012, December 19, 2012, March 7, 2013, and July 10, 2013 (Ex. 1 to Pl. Mem. Summ. J. p. 6, 8, 11, 13, 17, 30, 41). Dr. Blanks' treatment notes reference foot pain on August 5, 2012, September 24, 2012, December 19, 2012, and March 7, 2013 (Id. at 8, 11, 16, 22).

[13] To the extent that Wheeler attempts to argue that Dr. Blanks' treatment records show that her condition continued and/or worsened after her date last insured, this argument fails. Evidence developed after a claimant's termination of insured status may be relevant to prove disability arising before the date last insured if it relates back to the period when the claimant was insured and provides evidence of her impairments at that time. See Redditt v. Colvin, No. 7:13-cv-391, 2014 WL 2800820, at * 4, n. 3 (W.D. Va., June 17, 2014)(citing Bishop v. Astrue, No. 1:10-2714-TMC, 2012 WL 951775, at *4 (D.S.C. March 20, 2012). However, diagnosis of an underlying medical condition prior to the date last insured alone is insufficient if the symptoms or other manifestations are not disabling until after the insured status has ended. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); Jones v. Colvin, No. 6:13-cv-59, 2015 WL 1477892, at * 4–5 (W.D. Va., March 31, 2015). Here, Wheeler lacked disabling manifestations of her impairments before June 30, 2011. Thus, the medical evidence supports the ALJ's conclusion that Wheeler was not disabled through June 30, 2011.

[14] Additionally, even had the ALJ considered the medical records from Dr. Blanks submitted by Wheeler in exhibit 1, it would not have changed her decision to deny Wheeler's request to reopen her prior applications.

12

Acquiescence ruling ("AR") 00-1(4), provides that in determining the weight to give a prior finding, the ALJ should consider: (1) whether the prior finding relating to the severity of a claimant's medical condition was subject to change with the passage of time; (2) the likelihood of such a change considering the length of time that had elapsed; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the new claim.[15] AR 00-1(4), 65 Fed. Reg. 1936, 1938. An ALJ should "give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim," such as a few weeks. Id. Wheeler argues that the third factor applies to this case because the records and opinions from Dr. Blanks were not available to the previous ALJ.[16]

The ALJ properly considered the previous ALJ's decision pursuant to AR 00-1(4), giving that decision "considerable weight" because the "previously adjudicated period is close in time to the period now being adjudicated and the claimant has presented no new evidence showing a significant change in her condition through her date last insured of June 30, 2011." R. 26. Indeed, approximately five weeks elapsed between the previous ALJ decision and Wheeler's current date last insured. Moreover, as discussed previously, the treatment records from Dr. Blanks were well outside the relevant time period and showed routine and conservative care.

---

[15] An acquiescence ruling explains how the agency "will apply a holding in a decision of a United States Court of Appeals that [the agency] determine[s] conflicts with [its] interpretation of a provision of the Social Security Act or regulations." AR 00-1(4), 65 Fed. Reg. at 1936. In AR 00-1(4), the agency acquiesced in and interpreted the Fourth Circuit's decisions in Albright v. Commissioner, 174 F.3d 473 (4th Cir. 1999) and Lively v. Sec. of Health & Human Servs. 820 F.2d 1391 (4th Cir. 1999). That ruling explains that an adjudicator considering a subsequent disability claim must "consider the prior [decision] as evidence and give it appropriate weight in light of all relevant facts and circumstances." Id. at 1938.

[16] Wheeler also argues that the May 26, 2011 decision fails to adequately address her low back pain. The ALJ acknowledges that Wheeler's low back pain "may have inadvertently been not included as a severe impairment" but states that the "prior decision did account for this impairment in the [RFC], as it was found that [Wheeler] was limited in her ability to push and pull with her lower extremities due to radiating pain." R. 18.

13

**CONCLUSION**

The issue for this court to determine is whether the ALJ's decision is supported by substantial evidence. This standard—defined as more than a mere scintilla but less than a preponderance—has been met in this case. Therefore, I cannot reverse the ALJ's decision. See Craig, 76 F.3d at 589.

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Wheeler's claim for benefits and in determining that her impairments would not significantly limit her ability to do basic work activities. Accordingly, I **AFFIRM** the Commissioner's decision, Wheeler's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

Entered: March 7, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge